Robert Lloyd **BROWN**, Petitioner,

v.

**UNITED STATES** of America,
Respondent.

**No. 71–1441.**

United States Court of Appeals,
Eighth Circuit.

Jan. 26, 1972.

---

Robert Lloyd Brown, pro se.

Daniel Bartlett, Jr., U. S. Atty., and John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, ROSS, and STEPHENSON, Circuit Judges.

PER CURIAM.

This is a proceeding under 28 U.S.C. § 2255 in which the petitioner, Robert Lloyd Brown, seeks to have the Court vacate the judgment of conviction and sentence imposed thereon after a plea of guilty to one count of an indictment brought under 18 U.S.C. § 1343. The trial court denied and overruled Brown's motion, and we affirm the decision of the trial court.

In September of 1970, Brown was charged in nine counts with use of interstate telephone and telegraph facilities in furtherance of a scheme to defraud. Trial commenced on October 14, 1970, and evidence was introduced from one of the recipients of the telephone calls and wires. At the start of the afternoon session, Brown's court appointed attorney advised the court that Brown wished to change his plea to guilty as to Count I, and the United States Attorney indicated that when this had been accomplished, the other eight counts would be dismissed. After questioning by the court, the plea was accepted, and Brown was sentenced to the custody of the Attorney General for a period of five years under 18 U.S.C. § 4208(a).

Petitioner claims that he should be allowed to withdraw his plea of guilty because "without knowing the true nature of his plea [petitioner] received unfulfilled promises of probation by U.S. Attorney and counsel." He also claimed he had not been fully advised of the consequences of the plea and did not know he was "waivering [sic] all jurisdictional rights."

On this appeal, Brown assigns five reasons that this Court should reverse the decision of the trial court as follows:

1. The district court erred in failing to ascertain a factual basis for defendant's plea of guilty.

2. Promises were made to defendant by his court appointed counsel and not fulfilled.

3. Defendant's attorney was both incompetent and inadequate.

4. At time of the plea, the defendant was under the influence of stimulating drugs; that defendant's counsel knew of this and made no motion to discontinue proceedings until after defendant could and would be fully aware of his actions and statements.

5. There was an incomplete medical evaluation of petitioner at the Federal Medical Center for Federal Prisoners at Springfield, Missouri (prior to trial).

This Court will not consider the fourth and fifth allegations since they were not raised in the motion filed by Brown in the trial court. The other three allegations have been considered and found to be without merit based upon a full consideration of the transcript of that portion of the original proceedings in which Brown entered his plea and was sentenced.

The trial court did ascertain a factual basis for defendant's plea of guilty. The court had theretofore heard testimony on that count from the intended victim of the scheme and others. When

Brown decided to change his plea, the following discussion took place between the court and the defendant:

"THE COURT: As I understand, Mr. Brown, you have indicated to your attorneys that you wanted to change your plea with respect to Count 1 and plead guilty?

THE DEFENDANT: This is true.

THE COURT: And that is the one that deals with Reverend Thomas C. Kelley, Jr., of Miami, Florida. You have heard the testimony of Reverend Kelley here, and the testimony of the officers with respect to it. Is that what occurred—in substance, I mean, with respect to the telephone conversations, the sending of the wire, and so on?

THE DEFENDANT: Well, by the wire—I sent the wire, but I didn't make the telephone calls.

THE COURT: Were you in on the telephone calls?

THE DEFENDANT: No, I just went down with Stovall to get the money for him, I didn't make the phone calls at all.

THE COURT: You didn't have anything to do with it?

THE DEFENDANT: Not the phone calls.

THE COURT: Did you have anything to do with—were you and these other people—

THE DEFENDANT: I was more or less played for a sucker to go down and get the money for them. I didn't know where it was coming from.

THE COURT: Did you know what was going on?

THE DEFENDANT: Later on, I did, yes.

THE COURT: Before you went to get the money?

THE DEFENDANT: No, but later on.

THE COURT: I can't accept your plea on that. You either knew what was going on when you went down there or you didn't.

THE DEFENDANT: Okay, I knew what was going on.

THE COURT: You knew what was going on?

THE DEFENDANT: Yes."

■ This discussion is a satisfactory showing that the trial judge satisfied himself as to the factual basis for the plea before accepting it.

The assertions of promises allegedly made by Brown's attorney and the U.S. Attorney appear to be frivolous in view of the following portions of the same transcript:

"THE COURT: Has anyone made any promise to you as to what sentence you might get if you entered this plea?

THE DEFENDANT: No, just my lawyers told me what you said and the prosecuting attorney said, and that was about it, no promises.

THE COURT: Any threats against you in order to get it, anyone threatened you?

THE DEFENDANT: No, really, I think the reason I'm pleading guilty is because I want to get it over with.

\* \* \* \* \* \*

THE COURT: Do you have anything you want to say, Mr. Brown, at this time before the court passes sentence?

THE DEFENDANT: No, sir, except I went through the Medical Training at Springfield, things like this, and they haven't found any mental. Then I went to Baltimore, Maryland, the escape was—one of the policemen came after me told me to run like hell, so I ran, because I was being extradited back to jail, because I knew something on them, but I don't think I should go to a hospital anywhere. I was talking to my attorney, you know, I have a lot of problems because I went to Fort Meyers about eighteen and my mother always thought the

**48**

doctor there—you know, released me too soon and she's been holding it over my head that I've been a mental problem all these years, you know, so for once in my life I would rather go somewhere I could get some help, like a halfway house, more like that, where I can get my life together.

THE COURT: Of course, the halfway houses, Mr. Brown, come into effect before they turn you loose.

THE DEFENDANT: I talked to—

THE COURT: What they do at this time, now, is send most of them at least—I don't know what they will do in your instance—

THE DEFENDANT: I talked to my attorney about this, but he told me that—you wouldn't go along with it.

THE COURT: Even on a halfway house—

THE DEFENDANT: No, I asked him for something else.

THE COURT: What is it you're wanting?

THE DEFENDANT: Well, I told him, you know, see I've been going to the out-patient clinic at Malcolm Bliss Medical Center. I been talking to a doctor over there, a doctor named Garrett. He left. I asked my attorney, Mr. Johnson, if I could get a five or ten years' parole and start going to the Medical Center and keep my treatments up and he said he wouldn't go along with it, and so I told him—

THE COURT: Well, of course, when he wouldn't go along with it—

THE DEFENDANT: Said you wouldn't go along with it.

THE COURT: I don't bargain with anybody."

■ Our examination of the record convinces us that Brown was represented by competent counsel and that Brown's change of plea was not induced by any promise made by either Government counsel or by Brown's court appointed attorney.

Judgment affirmed.